UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

REA NAVIGATION, INC.,

    Plaintiff,

  - against -

WORLD WIDE SHIPPING LTD.,
KAALBYE PROJECTS, KAALBYE
SHIPPING INTERNATIONAL LIMITED
and SILVER STREAMS LTD.,

    Defendants.

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/14/09

**MEMORANDUM
OPINION AND ORDER**

**08 Civ. 9951 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

On January 15, 2009, this Court entered an ex parte order on behalf of

REA Navigation, Inc. ("REA"), directing attachment and garnishment of the assets

of World Wide Shipping Ltd. ("WWS"), or Kaalbye Projects, Kaalbye Shipping

International Limited ("Kaalbye Shipping"), or Silver Streams Ltd. ("Silver

Streams") as the alter egos of WWS.  On January 30, 2009, WWS moved to vacate

a portion of the attachment.  This Court granted WWS' motion on March 9, 2009.

Kaalbye Projects, Kaalbye Shipping, and Silver Streams (collectively "Alter Ego

Defendants") now move to vacate the attachment of their funds.  REA has

1

restrained a total of $128,502.93 from the Alter Ego Defendants.[1]  For the reasons

stated below, the motion to vacate the order of attachment is denied without

prejudice to renew the motion after limited discovery.

## II.   BACKGROUND[2]

This case arises out of a dispute regarding a time charter agreement

(the "Charter") between REA and WWS for the charter of the vessel M/V Lady

REA (the "Vessel").[3]  REA alleges that WWS breached the Charter by failing to

properly load, stow, and discharge the Vessel's cargo and by issuing bills of lading

on terms that violated the Charter.[4]  REA also alleges that the Alter Ego

Defendants "dominate and disregard the corporate form of WWS to the extent that

---

[1]      *See* 8/13/09 Affirmation of Jon Werner, Counsel for the Alter Ego
Defendants, ("Werner Aff.") ¶ 8.

[2]      A detailed description of the facts can be found in this Court's March
9, 2009 Order. *See REA Navigation, Inc. v. Wold Wide Shipping Ltd.*, No 08 Civ.
9951, 2009 WL 693625, at *1-2 (S.D.N.Y. Mar. 9, 2009).  The instant
Memorandum Opinion and Order provides a summary of the facts relevant to
REA's alter ego allegations.  Otherwise, the instant Memorandum Opinion and
Order assumes familiarity with the underlying facts of this case.

[3]      In granting a maritime attachment, in contrast to in *vacating* a
maritime attachment, the court presumes the factual allegations to be true.  *See
Transfield ER Cape Ltd. v. Industrial Carriers, Inc.*, 571 F.3d 221, 222 (2d Cir.
2009) ("[B]ecause maritime attachments are granted on the pleadings, we assume
all allegations in the complaint to be true." (internal quotations omitted)).

[4]      *See* Second Amended Verified Complaint ("Compl.") ¶¶ 29-30.

[the Alter Ego Defendants] are actually carrying on the business and operations of WWS as if they were their own, or vice versa."[5]

Specifically, REA alleges that on October 27, 2008, Kaalbye Shipping wired a payment to REA on behalf of WWS.[6]  The payment was made from the same bank WWS used to pay REA.[7]  Additionally, the account transaction details list Kaalbye Shipping's address as 10 Bunina St., Odessa, Ukraine ("Bunina Street Address"), which is also WWS' address.[8]  On December 26, 2008, Silver Streams wired a payment to REA on behalf of WWS.[9]  Like the payment from Kaalbye Shipping, Silver Streams' payment was made from the same bank WWS used to pay REA and listed Silver Streams' address as the Bunina Street Address.[10]

REA also alleges that Kaalbye Projects and Kaalbye Shipping

---

[5]    *Id.* ¶ 16.

[6]    *See id.* ¶ 20; 10/28/08 Account Transaction Details, Ex. 3 to Declaration of Bassam Mamari, Manager for REA ("Mamari Decl.").

[7]    *See* Compl. ¶ 20; 10/28/08 Account Transaction Details.

[8]    *See id.*

[9]    *See* Compl. ¶ 21; 12/26/08 Account Transaction Details, Ex. 3 to Mamari Decl.

[10]    *See id.*

3

conducted negotiations with REA on behalf of WWS and that Kaalbye Projects and Kaalbye Shipping provided orders and other communications to the Vessel.[11] Victor Puyu, a Kaalbye employee, attended the Charter negotiations.[12]  REA understood that Puyu was present at the negotiations on behalf of WWS but not as WWS' broker because a representative from Ernst Russ GmbH & Co. KG was present at the negotiations as WWS' broker.[13]  During the negotiations, Puyu told REA that WWS and the Alter Ego Defendants were "all one company."[14]

Finally, REA alleges that the Alter Ego Defendants share the Bunina Street Address, telephone numbers, contact information, and staff with WWS.[15] Staff members from WWS, Kaalbye Projects, and Kaalbye Shipping sent e-mails to REA from both WWS and Kaalbye e-mail addresses.[16]  Kaalbye employees also sent letters to REA on WWS' letterhead and REA's telephone calls to WWS were

---

[11]     *See* Compl. ¶¶ 25-26.

[12]     *See* Mamari Decl. ¶ 5.

[13]     *See id.*

[14]     *Id.*

[15]     *See* Compl. ¶¶ 22-24.

[16]     *See* E-mails from Valeria Oleynikova, a WWS and/or Kaalbye employee, Ex. 2 to Mamari Decl.; E-mail from Alexander Vavarenko, a Kaalbye employee, Ex. 4 to Mamari Decl.

4

answered by Kaalbye Projects or Kaalbye Shipping.[17]  The sole director of Silver

Streams was also one of three directors of Kaalbye Shipping.[18]

## III.    APPLICABLE LAW

### 1.    Vacatur Under Rule E(4)(f)

Supplemental Rules B and E of the Federal Rules of Civil Procedure

govern attachment of assets in maritime actions.  If the defendant is not present

within a district, Rule B allows for the attachment of the defendant's assets up to

the amount in dispute.[19]  Rule E entitles a party claiming an interest in attached

property to "a prompt hearing at which the plaintiff shall be required to show why

the arrest or attachment should not be vacated."[20]  The Second Circuit has held

that in addition to meeting the service and filing requirements of Rules B and E, a

plaintiff opposing vacatur of an attachment must show that "1) it has a valid prima

facie admiralty claim against the defendant; 2) the defendant cannot be found

within the district; 3) the defendant's property may be found within the district;

---

[17]     *See* Compl. ¶ 24; 5/9/08 Letter form Vavarenko to Mamari Shipping
Co., Ex. 4 to Mamari Decl.

[18]     *See* Mamari Decl. ¶ 4; Certificates of Incorporation for Silver Streams
and Kaalbye Shipping, Exs. E-F to Werner Aff.

[19]     *See* Fed. R. Civ. P. Supp. R. B(1)(a).

[20]     Fed. R. Civ. P. Supp. R. E(4)(f).

and 4) there is no statutory or maritime law bar to the attachment."[21] "Rule E(4)(f)

clearly places the burden on the plaintiff to show that an attachment was properly

ordered and complied with the requirements of Rules B and E."[22]

In the Second Circuit, two different standards have been used to

govern the showing of a valid prima facie admiralty claim. Under the prima facie

standard, "'a plaintiff seeking a maritime attachment need not provide any

supporting evidence.'"[23] It is a sufficient showing of a valid prima facie admiralty

claim if the plaintiff pleads facts that support the claim.[24] Under the reasonable

grounds standard, conclusory allegations without factual support are insufficient

to show a valid prima facie admiralty claim.[25] However, even the reasonable

---

[21]     *Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty, Ltd.*, 460 F.3d 434,
445 (2d Cir. 2006).

[22]     *Id.* at 445 n.5.

[23]     *C. Transport Panamax, Ltd. v. Kremikovtzi Trade E.O.O.D.*, No. 07
Civ. 893, 2008 WL 2546180, at *3 (S.D.N.Y. June 19, 2008) (quoting *Transportes
Navieros y Terrestes, S.A. de D.V. v. Fairmount Heavy Transport N.V.*, No. 07
Civ. 3076, 2007 WL 1989309, at *4 (S.D.N.Y. July 6, 2007)).

[24]     *See SPL Shipping Ltd. v. Gujurat Cheminex Ltd.*, No. 06 Civ. 15375,
2007 WL 831810, at * 3 (S.D.N.Y. Mar. 15, 2007) (stating that under the prima
facie standard "this Court will only look to Plaintiff's pleadings, and not to any
evidence submitted by the Parties, to determine whether Plaintiff has made a
legally sufficient claim").

[25]     *See Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 53 (2d Cir.
2008) (finding that the district court did not abuse its discretion in vacating

6

ground standard does not require the plaintiff to prove its case during a Rule

E(4)(f) proceeding.[26]

### 2.    Alter Ego Liability

The Second Circuit has stated two primary considerations for

determining when alter ego liability is appropriate — "(1) whether the entities in

question operated as a single economic entity, and (2) whether there was an

overall element of injustice or unfairness."[27]  Factors that indicate the entities

operate as a single economic entity include

> (1) disregard of corporate formalities; (2) inadequate
> capitalization; (3) intermingling of funds; (4) overlap in
> ownership, officers, directors, and personnel; (5) common
> office space, address and telephone numbers of corporate
> entities; (6) the degree of discretion shown by the allegedly
> dominated corporation; (7) whether the dealings between
> the entities are at arms length; (8) whether the corporations
> are treated as independent profit centers; (9) payment or

---

attachments where "[p]laintiffs' allegations regarding the liability of the other
corporate entities are supported merely by generalized assertions in the attorney-
verified complaint in this action, unsworn court filings in related actions, and
documentation showing common business addresses and management").

[26]    *See Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475
F. Supp. 2d 275, 279 (S.D.N.Y. 2006) (applying the reasonable ground standard
but finding "plaintiff in a Rule E(4)(f) proceeding should not be required to prove
their case").

[27]    *NetJet Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d
Cir. 2008) (citing *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995)).

guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.[28]

## IV.   DISCUSSION

The only issue in dispute is whether REA has made a sufficient showing that the Alter Ego Defendants are in fact WWS' alter egos.  The Alter Ego Defendants argue that the determination should be made using the reasonable ground standard and REA argues that the prima facie standard is appropriate because it is used by the majority of courts in the Second Circuit.  The appropriate standard need not be decided in this case.  REA's allegations go beyond boilerplate generalized assertions and provide reasonable grounds to conclude that the Alter Ego Defendants are WWS' alter egos.

REA supports its allegation that Kaalbye Projects and Kaalbye Shipping dominated and controled WWS, or vice versa, by sufficiently pleading facts showing that Kaalbye Shipping made a payment to REA on behalf of WWS; Kaalbye Projects, Kaalbye Shipping and WWS share an office, email addresses, telephone numbers, and staff; and Kaalbye Projects and Kaalbye Shipping conducted business on behalf of WWS.  In light of the factors stated above, I find

---

[28]     *MAG Portfolio Consultant, GmbH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (quoting *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997)).

8

that REA has pled sufficient facts to support the continued attachment of Kaalbye

Projects' and Kaalbye Shipping's funds.

REA supports its allegation that Silver Streams dominates and

controls WWS, or vice versa, by sufficiently pleading facts showing that Silver

Streams made a payment to REA on behalf of WWS, shares a common director

with Kaalbye Shipping, and shares the Bunina Street Address with WWS, Kaalbye

Projects, and Kaalbye Shipping.  Silver Streams' payment to REA for WWS is

highly suggestive of commingled funds and strongly supports REA's alter ego

theory.[29]  In light of the factors stated above, I find that REA has pled sufficient

facts to support the continued attachment of Silver Streams' funds.

While there is enough evidence in support of REA's alter ego

allegations to discharge REA's pleading obligations at this stage of the

proceedings, it is possible that REA will ultimately fail to prove that the Alter Ego

Defendants are WWS' alter egos.  An erroneous attachment of funds is extremely

burdensome on the companies whose funds are attached.  In order to ensure that

the Alter Ego Defendants' funds are not attached longer than necessary, the Alter

---

[29]    *See Wijilam Exports*, 475 F. Supp. 2d at 284-85 (finding an allegation
that one company paid another company's debts "highly relevant to a veil-piercing
theory, because it implicates a number of [the relevant] factors, including
disregard of corporate formalities, intermingling of funds, transactions not at arm's
length, and failure to treat the corporations as independent profit centers").

Ego Defendants may engage in discovery limited to the alter ego question.

Following such discovery, the Alter Ego Defendants may renew their motion to

vacate.

## V.    CONCLUSION

For the reasons set forth above, defendants' motion to vacate the

attachment is denied without prejudice to renew after limited discovery.  The

Clerk of the Court is directed to close this motion (docket # 19).

SO ORDERED

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            October 14, 2009

10

## - Appearances -

**For Plaintiff:**

Garth S. Wolfson, Esq.
Mahoney & Keane, LLP
11 Hanover Square, 10th Floor
New York, NY 10005
(212) 385-1422

**For Defendants World Wide Shipping Ltd., Kaalbye Projects, Kaalbye Shipping International Limited, and Silver Streams Ltd.:**

Jon Werner, Esq.
Kirk M. Lyons, Esq.
Lyons & Flood, LLP
65 W. 36th Street, 7th Floor
New York, NY 10018
(212) 594-2400

11